UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80554-CIV-HURLEY

ANDY LEE JACKSON  II,
     plaintiff,

vs.

SERGIO MONTESINO and
RIC L. BRADSHAW in his official
capacity as  Sheriff of Palm Beach
County, Florida,
     defendants.
_____/


ORDER DENYING DEFENDANT SERGIO MONTESINO'S
MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY
DEFENSE & GRANTING DEFENDANT RIC L. BRADSHAW'S
MOTION FOR SUMMARY JUDGMENT ON COUNTS 5 AND 6

### I. Preface

This case arises out of the shooting of plaintiff Andy  Lee Jackson II  ("Jackson") during a

police investigation of a  possible burglary of an abandoned house in unincorporated Lake Worth,

Florida. Jackson brings the current §1983 action against defendant Sergio Montesino ("Montesino"),

the deputy sheriff who shot him in the head during the course of an arrest,  asserting  that Montesino

used  excessive force in apprehending him after he surrendered, in violation of his rights under the

Fourth and Fourteenth Amendments of the United States Constitution (Count 3).   He also asserts

a  §1983 claim against defendant Ric Bradshaw ("Bradshaw" or "the Sheriff"),  the  Sheriff of Palm

Beach County,  contending that the Palm Beach County Sheriff's Department  is responsible for

Montestino's constitutional violation based on its custom and policy  of encouraging or tolerating

use of excessive force by its deputies, and/or its deliberate indifference to the risk of constitutional

violation attendant to its inadequate screening, training, supervision and retention of Officer Montesino (Count 4). Further, he charges the Sheriff with common law negligence based on the Department's alleged negligence in the hiring/training/supervision and retention of Officer Montesino (Count 5).

The case is now before the court on Defendant Montesino's motion for summary judgment based on qualified immunity [DE# 14], and Defendant Bradshaw's motion for summary judgment on the *Monell* custom and policy § 1983 claim and the common law negligent hiring, retention and supervision claim [DE# 13] [1]

## II. <u>Facts</u>

_____On June 9, 2007, Jackson and a group of friends went to an abandoned house in unincorporated Lake Worth to gamble. At approximately 1 a.m, Nathan Ralph, a nearby resident, called 911 to report a person on the roof of the abandoned home. Deputy Sheriff Patrick Hagerty was dispatched as primary officer to the scene, with Deputy Sheriff Sergio Montesino sent as back-up unit. By the time Montesino arrived, Hagerty had detained four individuals [Monforte Desio; Miguel DeJesus; Rene Castellon and Jose Castellon] and was in the process of running warrant searches on them.

While Hagerty was busy researching the histories of these individuals, Montesino began a perimeter search and discovered Andy Lee Jackson crouched behind an auto parked in the driveway. He ordered Jackson to show his hands and walk around the car.

---

[1] Plaintiff also asserts common law causes of action against the Sheriff in his official capacity based on *respondeat superior* liability for battery (Count 1) and general negligence (Count 2). The Sheriff's current motion does not challenge either of these vicarious liability common law tort claims.

Jackson says he immediately stood up and put his hands high in the air, and that as he came around the corner of the car Montestino inexplicably shot him once in the head. Two witnesses, Jose Castellon and Rene Castellon – corroborated that Jackson never dropped his hands, walked slowly around the car, and that Montesino fired the gun at Jackson's head at point blank range from just a few feet away.

Montesino's version of the event differs significantly with regard to Jackson's surrender position. According to Montesino, after he ordered Jackson out of his hiding place, Jackson came out with his hands up, at least parallel to his head, but suddenly lowered them toward his stomach as if to reach for his waistband as Montesino moved to re-holster his weapon. Responding to the sudden movement, Montesino says he intentionally fired a single "hip shot" at Jackson because he thought he might be reaching for a weapon.

As a result of the gunshot wound to his head, Jackson underwent two surgeries and faces a possible third surgery. He has sustained permanent partial memory loss and loss of full use of his dominant hand.

The Sheriff investigated the Jackson shooting and extended Montesino's employment probationary period during that internal investigation. Ultimately, the Sheriff terminated Montesino for violating department policy involving use of deadly force, failing to cover the primary deputy and violating department policy involving the use of profanity.

### III. Discussion

### A. §1983 Excessive Force Claim- Defendant Montesino (Count 3)

Section 1983 of the United States Code provides a civil remedy for the deprivation of any rights, privileges, or immunities secured by the Constitution and federal laws by a person acting

under color of statute, ordinance, regulation, custom or usage of any state, territory or the District

of Columbia.  Persons found to be in violation of this statute are liable to the party injured in an

action at law, suit in equity, or other proper proceeding for redress.  42 U.S.C. §1983.

In this case, Jackson seeks redress under §1983 claiming that Defendant Montesino violated

his Fourth Amendment   right "to be secure in [his] person . . . against unreasonable seizures."

United States Constitution, Amendment  IV.  *Graham v Connor*, 490 U.S. 386, 389, 109 S. Ct. 1865,

104  L. Ed.2d 443 (1989). [2]

## 1.  Qualified Immunity

Under § 1983, government officials who have violated rights conferred by federal statutes

or the Constitution may be sued in their individual capacities.  Because of qualified immunity,

however, public officials are ordinarily shielded from personal liability  for actions undertaken

during  their employment, allowing  public officials to carry out their jobs effectively without fear

of a lawsuit.  This doctrine protects "all but the plainly incompetent or those who knowingly violate

the law."  *McCoy v Webster*, 47 F.3d 404, 407 (11th Cir. 1995), quoting *Malley v Briggs*, 475 U.S.

335, 341, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986).

To establish qualified immunity, Defendant Montesino must show that he was acting within

the scope of his discretionary authority when the injuries occurred.  Discretionary authority in this

---

[2]  Plaintiff also charges a violation of his due process rights under the  Fourteenth
Amendment.  However, a claim of excessive force during arrest is  properly brought under the
Fourth Amendment's prohibition against unreasonable seizure, not  the Fourteenth Amendment due
process clause.   *Albright v Oliver,* 114 S. Ct. 807 (1994); *Garrett v Athens Clarke County, Ga.*, 378
F.3d 1274 (11th Cir. 2004), *citing Gutierrez v City of San Antonio*, 139 F.3d 441 (5th Cir.
1998)(Fourteenth Amendment protection begins after the incident of arrest is complete and pretrial
detention is in effect).

specific context includes "all acts taken pursuant to the performance of the official's duties, which are within the scope of his authority, including ministerial acts." *Hadley v Gutierrez*, 526 F.3d 1324 (11th Cir. 2008); *Rich v Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988).  Defendant Montesino is a deputy sheriff and was on duty when the incident in question occurred.  Thus,  he was plainly acting within the scope of his discretionary duty when he apprehended Jackson.

With this predicate, the burden shifts to plaintiff to show that qualified immunity is  not appropriate because defendant Montesino violated a clearly established constitutional or statutory law in carrying out the alleged harmful conduct.   *Vinyard v Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  In evaluating the sufficiency of plaintiff's showing, the court addresses the following  two-step inquiry: (1) whether  the facts shown by plaintiff establish  violation of  a constitutional  right, and, if so,  (2)  whether that right was "clearly established" at the time of the alleged misconduct. In the latter respect,  "[t]he contours of the right must be sufficiently clear that a reasonable official would  understand  that  what  he  is  doing violates that right." *Saucier v Katz*, 533 U.S. 194, 202.[3]

### a.  Did Montesino Violate  Jackson's Fourth Amendment Right to be Free of Excessive Force During a Police Seizure?

The   first  issue  thus  presented  is  whether,  under  Jackson's  version  of  the  facts,  his constitutional  right to be free from excessive force was violated by Officer Montesino, i.e. whether the  amount of force used by Officer Montesino was  objectively  reasonable in light of the facts

---

[3] Historically,  Supreme Court precedent required that the first of these criteria - i.e. whether the facts presented allege  a constitutional violation – be decided at the outset of the analysis. *Saucier v Katz*, 533 U.S. 194, 201 (2001).  Recently, however, the Court changed this rule,  holding that courts of appeals should be permitted to exercise their sound discretion  in deciding which of the two prongs  of  the qualified immunity analysis to address first in light of the circumstances  of the particular case.  *Pearson v Callahan*, 129 S. Ct. 808, 172 L. Ed.2d 565 (2009).

In this case, there is no  reason to alter the traditional  *Saucier* approach.

confronting him at the time of Jackson's arrest.

The reasonableness of the use of deadly force must be judged from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v Connor*, 490 U.S. .386, 396-97, 1090 S. Ct. 1865, 104 L.Ed.2d 443 (1989). Because the reasonableness test is purely objective, in light of all facts and surrounding circumstances, the arresting officer's actual intentions or motivations are irrelevant. *Graham,* 490 U.S. 386 at 397, 109 S. Ct. 1865, 104 L.Ed.2d 443, citing *Scott v United States*, 436 U.S. 128, 137-39, 98 S. Ct. 1717, 56 L.Ed.2d 168 (1978). Additionally, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

This "totality of the circumstances" approach requires careful attention to the facts and circumstances of the particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer or others, and whether he was acting to resist arrest or to evade arrest by flight at the time in question. *Graham* at 396, citing *Tennessee v Garner*, 471 U.S. 1, 8-9, 105 S. Ct. 1694, 85 L.Ed.2d (1985). *See e.g. Mace v City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003) (officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or others).

Other relevant factors include: (1) the need for application of force; (2) the relationship between the need and amount of force used; (3) the extent of the injury inflicted, and (4) whether the force was applied in good faith or maliciously and sadistically. *Hadley,* 526 F.3d at 1329.

In this case, it is undisputed that Officer Montesino found plaintiff hiding behind a parked

6

car at the site of an abandoned home in the early hours of morning following a neighbor's report of a person walking around on the roof of the building. It is also undisputed that upon discovery, Montesino directed Jackson to put his hands in the air and walk around the car. From here, the evidence is contradictory.

Viewed in a light most favorable to plaintiff, the evidence establishes that Jackson was not armed with a weapon, and that Montesino did not know at the time he found Jackson crouched behind a car whether he was armed with a weapon. As he walked around the car, Jackson held his hands above his head pursuant to Montesino's direction. When he was a few feet away, Montesino shot Jackson once at point blank range in the head.

A reasonable jury could find, under plaintiff's version of the event, that at the time of the shooting Montesino did not have probable cause to believe plaintiff posed a threat of serious physical harm to Officer Montesino or Officer Hagerty. And, although there was probable cause to believe plaintiff might have been involved in a burglary or at least a trespass on the property, he did not have a weapon and Officer Montesino did not know whether he had a weapon. Plaintiff did not threaten him with a weapon and made no movement that would lead the officer to believe he was getting ready to flee or harm the officers.

Viewed in this manner, a reasonable jury could find that shooting Jackson was clearly disproportionate to the threat he posed at the time of the shooting. While the court is hesitant to "second guess" the decisions of police officers in the field, it cannot conclude as a matter of law that no reasonable jury could find Officer Montesino's conduct unreasonable. *Vaughan v Cox*, 343 F.3d 1323, 1331 (11th Cir. 2003). A reasonable jury could find that intentionally shooting Jackson under the circumstances described by plaintiff constitutes the use of excessive force. Therefore,

Jackson establishes, for summary judgment purposes, the violation of his Fourth Amendment right to be free from excessive use of force during a police seizure. *See e.g. Priester v City of Riviera Beach*, 208 F.3d 919 (11th Cir. 2000)(police used excessive force by allowing canine to bite suspect for at least two minutes where plaintiff was suspected of stealing $20 of snacks from a golf shop, immediately submitted to police and did not attempt to flee).

**b. Was the constitutional right clearly established**?

Having found that a reasonable jury could conclude Officer Montesino employed excessive force in making the arrest, the inquiry turns to whether Jackson's right to be free of such force was clearly established.

For a right to be "clearly established," "the contours of the right must be sufficiently clear that reasonable official would understand that what he is doing violates that right." *Anderson v Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987); *Hope v Pelzer*, 536 US 730, 739, 122 S. Ct. 2508 (2002). In excessive force claims, plaintiff can establish the right was "clearly established" in two ways: (1) by citing controlling and materially similar case law declaring the official's conduct unconstitutional, or (2) by demonstrating that the official's conduct lies so obviously at the core of what the Fourth Amendment prohibits that the unlawfulness of the conduct should have been readily apparent to the official, notwithstanding the lack of case law. *Priester v City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000). In this context, the "controlling and materially similar case law" must come from the Supreme Court of the United States, the Eleventh Circuit Court of Appeals or the highest court of the State whose law is at issue. *Hamilton v Cannon*, 80 F.3d 1525, 1531 (11th Cir. 1996).

Viewing the evidence here in the light most favorable to Jackson, Officer Montesino

intentionally fired a single shot into the head of a man who was walking slowly around a car with his hands up in the air as directed by the officer. Under well established Supreme Court and Eleventh Circuit precedent in effect at the time of this arrest, no objectively reasonable officer in Montestino's position could have believed that he was entitled to use deadly force to effect Jackson's arrest under these circumstances.

Under *Tennessee v Garner*, 471 U.S. 1, 105 S. Ct. 1694 (1985), Officer Montesino would have been on notice that deadly force would be justified only if he had probable cause to believe Jackson posed a threat of serious physical harm either to Officer Montesino or others. Under Jackson's version of the event, these circumstances did not exist. Further, Montesino had fair warning from Eleventh Circuit precedent that shooting a suspect who is unarmed and unequivocally surrendering violates the suspect's constitutional right to be free of excessive force. *See e.g. Vinyard v Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002)(grabbing and pepper spraying arrestee who is handcuffed and surrendering); *Priester v City of Riviera Beach*, 208 F.3d 919 (11th Cir. 2000)(releasing police attack dog on suspected petty thief of golf shop who came out with hands in air, and followed directions to drop to ground). [4]

---

[4] Under Montesino's version of the event, Jackson's alleged sudden drop of the hands toward his waist could reasonably have been interpreted as a move toward a weapon that would have justified use of deadly force. *See e.g. Crenshaw v Lister*, 556 F.3d 1283 (11th Cir. 2009)(use of canine to effect arrest of armed robbery suspect who fled into wooded area at night, even though he was attempting to surrender at time canine was released*); Ontiveros v City of Rosenberg, Texas*, 564 F.3d 379 (5th Cir. 2009)(deadly force justified where SWAT team member arrived at mobile home, tried to kick in door of bedroom three times, believed suspect was blocking it, shouted "let me see your hands" when door opened, and thought he saw suspect reaching into a boot at chest level for what he believed could be a weapon); *Reese v Anderson*, 926 F.2d 494 (5th Cir. 1991)(suspect repeatedly refused to keep hands raised and appeared to be reaching for object): *Young v City of Killeen*, 775 F.2d 1349 (5th Cir. 1985)(suspect refused instructions to exit vehicle and reached down to the floorboard).

In short, under plaintiff's version of events, no objectively reasonable officer in Montestino's position could have reasonably believed he was entitled to shoot Jackson at the time and in the manner he did. Accordingly, Defendant Montesino is not entitled to qualified immunity, and his motion for summary judgment based on this defense is appropriately denied. *See e.g. Caruthers v McCawley*, 2008 WL 4613048 (M.D. Fla. 2008)(denying summary judgment in §1983 excessive force claim where bank robbery suspect exited hotel with arms in air and announced he was unarmed, and officer shot him once in chest as he walked toward him, and three more times as he tried to run away).

### B. §1983 Excessive Force Claim-- Defendant Bradshaw (Count 4)

Under *Monell v Department of Social Services of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality cannot be held liable under 42 U.S.C. § 1983 under *respondeat superior* theory, i.e. it cannot be held liable under §1983 simply because one if its agents or employees causes an injury, even a constitutional injury. *Id.* at 691. Rather, a municipality can be sued for damages under §1983 only when the action that is alleged to be unconstitutional "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers," or the action is "visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision making channels." *Monell* at 690 -91.

Thus, *Monell* imposes liability on municipalities for deprivations of constitutional rights only where the violation is visited pursuant to municipal policy, whether that policy is officially promulgated or authorized by custom. Further, the official policy or custom must be "the moving force of the constitutional violation" in order to establish § 1983 liability of a government body,

10

*Polk County v Dodson*, 454 U.S. 312, 102 S. Ct. 445, 454, 70 L.Ed.2d 509 (1981), and the custom must be created by city "lawmakers or those whose edicts or acts may fairly be said to represent official policy." *Monell* at 694.

In this particular context, "custom" means those practices of city officials that are "so permanent and well settled" as to accumulate "the force of law." *Monell* at 691. It incorporates "persistent and widespread ... practices" or practices that are "permanent and well settled" or "deeply embedded traditional ways of carrying out.....policy." *Id.* The essential theory is that a widespread practice of unconstitutional behavior is tantamount to unofficial custom, practice or policy. *Depew v City of St. Marys, Georgia*, 787 F.2d 1496 (11th Cir. 1986).

In this case, plaintiff does not suggest that Officer Montesino injured him in the process of executing an officially promulgated policy statement, regulation or decision of Sheriff Bradshaw. Rather, Jackson seeks to hold the Sheriff liable on a custom and policy theory of *Monell* liability, charging that Officer Montesino injured him while carrying out two alleged customs of the Sheriff's Department, both presumably established by Defendant Bradshaw. The first is the custom of the Sheriff's Department to encourage or tolerate the use of excessive force in police / citizen encounters. The second is the Department's alleged custom of improperly selecting and training its officers. To prove the existence of each of these customs, the plaintiff must establish two elements: (1) that the alleged custom existed, and (2) that the alleged custom had been created or maintained by one or more "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694.

On the first custom, plaintiff does not produce any evidence of incidents in which Palm Beach County deputy sheriffs used excessive force in citizen encounters, and adduces nothing at all

to indicate that any policy-setting official within the Department tolerated or approved of, much less encouraged, such conduct.  To the contrary, Sheriff  Bradshaw adduces evidence showing that officers who do stray from the official protocol on use of force are disciplined, including termination where appropriate.[5] On this record, accepting plaintiff's version of the underlying event, Jackson's claim against the Sheriff is based on an isolated incident in which a deputy sheriff under Bradshaw's direction  used  excessive deadly force to effect an arrest.

Random acts or isolated incidents of police misconduct do not, however, suffice to establish *Monell* custom or practice liability.  Without evidence beyond the allegation of  this isolated incident, plaintiff fails to meet his burden on summary judgment of showing that there is a widespread policy which promoted excessive force and caused plaintiff's particular injury.  Hence, the Sheriff is entitled to summary judgment as to plaintiff's first custom and policy *Monell* claim. *See e.g. Low  v  Stanton*, 2009 WL 807506 (E.D. Cal. 2009) and cases cited *infra.*

Next,  as to the suggestion that one or more unnamed employees in the Sheriff's department were negligent  to the point of "deliberate indifference" in failing to properly train or supervise plaintiff,  this claim fails as a matter of law because  neither gross negligence nor deliberate indifference  is the correct standard for measuring a municipality's  § 1983 liability  under *Monell. See Gilmere v  City of Atlanta, Georgia*, 737 F.2d 894 (11th Cir. 1984).

There are a number of ways in which a "policy" can be set by a  municipality  to cause it  to be  liable  under §1983; one is the  failure of the government to respond to a need (e.g. need for

---

[5] In this particular case, Bradshaw demonstrates that the Department  conducted an internal investigation  of the Jackson shooting  and concluded  that excessive force was used by Montesino in violation of the Department's  internal policy and procedures governing use of deadly force.  The Sheriff placed  Montesino on probation as a direct result of that finding, and  ultimately  fired him for failing to complete his probationary period.

employee training) in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in a constitutional violation. *City of Canton v Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 1206-06, 103 L.Ed.2d 412 (1989); *Daskalea v Dist. Of Columbia*, 227 F.3d 433, 441 (D. C. Cir. 2000).

A municipality acts with deliberate indifference to the risk of constitutional injury in either of two circumstances. First, when "in light of the duties assigned to a specific officer or employee, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," the deficiency is deemed to exhibit deliberate indifference on part of the policy makers. *City of Canton v Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197 (1989). Alternatively, deliberate indifference may be found where a repeated pattern of constitutional violations makes "the need for further training . . plainly obvious" to the policymaker. *Id.*

In the latter instance, "deliberate indifference" is determined by analyzing whether the municipality knew or reasonably should have known of the risk of constitutional violations, which knowledge may be imputed through a pattern of prior constitutional violations. *Young v City of Providence ex rel. Napolitano*, 404 F.3d 4 (1st Cir. 2005). Thus, the inquiry turns on whether the municipality knew or should have known of the risk of constitutional violations, but did not act. This is an objective standard, but involves more than mere negligence. It does not require a municipality to take reasonable care to discover and prevent constitutional violations. It means simply that, faced with actual or constructive knowledge that its agents will probably violate constitutional rights, a municipality may not adopt a policy of inaction. *See Warren v District of Columbia*, 353 F.3d 36 (D. C. Cir. 2004), citing *Farmer v Brennan*, 511 U.S. 825, 841, 114 S. Ct. 1970, 1981, 128 L.Ed.2d 811 (1994).

Jackson does not adduce evidence in support of either theory here.  He does not proffer evidence of ongoing constitution violations of which the Sheriff knew or should have known, or the existence of prior complaints relating to this issue that went ignored by the Sheriff's Department. Further, while he suggests that Montesino should have received more specialized training specifically related to use of excessive force, he does not show why the need for more or different training for Montesino should have been obvious to the Sheriff, nor does  he show how any particular deficiency in Montesino's training was obviously likely to result in the violation of plaintiff's  constitutional right to be free of excessive force.  Thus, even if a reasonable trier of fact were to conclude that Montesino's actions violated Jackson's constitutional rights, no reasonable trier of fact could conclude that the alleged constitutional deprivation was caused by a policy or custom of the Sheriff's Department.   Jackson thus fails to sustain his failure to train *Monell* theory of § 1983 liability against the Sheriff. *Jenkins v Bartlett*, 487 F.3d 482 (7th Cir. ), *cert. den*. 128 S. Ct. 654 (2007); *Joines v Township of Ridley*, 229 Fed. Appx. 161 (3d Cir. 2007).

Similarly, plaintiff's allegations of "deliberate indifference" or gross negligence in the hiring of Montesino do not establish a basis for *Monell* liability, where plaintiff proffers no evidence of a historical practice of recklessly conducting background investigations for police officer applicants which continued despite a documented pattern of constitutional violations committed by an unstable or otherwise unqualified force.   Nor is there even any evidence of something amiss with Montestino's background  which might have cautioned against his hire had the Sheriff conducted a more thorough background investigation.[6]  Although there is evidence that his application for

---

[6]  Rather, the uncontradicted evidence is that the Sheriff screened Montesino's background in accordance with the requirements of Fla. Sta. §943.13 (2006), the state standards governing

position as a public safety officer (fireman) with the City of Greenacres was rejected, the uncontradicted evidence is that this was based on his failure to pass a physical exam, and was not otherwise related to his qualifications to serve in law enforcement.

Even assuming *arguendo* the background check on Montesino was substandard, Jackson succeeds only in establishing a single isolated allegedly improper hiring decision by the County sheriff. This will not sustain *Monell* liability absent proof, failing here, that the hiring decision rose to the level of deliberate indifference to a plainly obvious risk that the person hired would commit the type of constitutional violation that actually resulted in plaintiff's injury. *Board of County Com'rs of Bryan County, Okl. v Brown,* 520 U.S. 397, 117 S. Ct. 1382, 137 L.Ed.2d 626 (U.S. 1997); *Benavides v County of Wilson*, 955 F.2d 968, 973 (5th Cir. ), *cert. den*., 506 U.S. 824, 113 S. Ct. 79, 121 L.Ed.2d 43 (1992).

The court shall accordingly grant the Sheriff's motion for summary judgment on plaintiff's failure to screen /train theory of *Monell* liability. *See generally Board of County Commissioner of Bryan Okla. v Brown, supra; Graham v Sauk Praire Police Commission* 915 F.2d 1085 (7th Cir. 1990); *Gonzalez v Ysleta Independent . Sch. Dist.,* 996 F.2d 745 (5th Cir. 1993).

**C.  Negligent hiring, training, retention and supervision - Defendant Bradshaw (Count 5)**

Jackson also asserts state law negligence claims against the Sheriff based on the Department's alleged negligent hiring, training, retention and supervision of Montesino.

The State of Florida and its subsidiaries are generally immune from tort liability, Fla. Const.

---

minimum qualifications for employment as a law enforcement officer. *Cf. Conner v Travis County*, 209 F.3d 794, 298 (5th Cir. 2000)(where law enforcement department meets the state standards for training of its law enforcement officers, plaintiff cannot sustain a failure to train Monell claim under §1983)

Art. X, s. 13, except to the extent it has waived its sovereign immunity "under circumstances in which the state or agency or subdivision, if a private person would be liable to the claimant, in accordance with the general laws of this state" pursuant to §768.28, Fla. Stat (2007). At the same time, even if the claim alleges tort liability under which a private person would be liable, the waiver of sovereign immunity does not apply if the challenged acts of the state agent are "discretionary" governmental acts rather than merely "operational" ones.

The negligent hiring, retention or supervision of an incompetent, dangerous agent or servant under circumstances which establish that the employer knew or should have known of the agent's or servant's incompetence and dangerousness, and the likelihood or foreseeability that the agent would injury a third person, is long established as a basis for tort liability under Florida law. *See Mallory v O'Neil,* 69 So.2d 313 (Fla. 1954) . Similarly, under Florida law, an employer is liable in tort for reasonably foreseeable damages resulting from the negligent training of its employees and agents. *See e.g McFarland & Son, Inc. v Basel*, 727 So.2d 266 (Fla. 5th DCA 1999).

Accordingly, the viability of this tort is recognized in actions against the state or one of its agencies. The negligent retention or supervision of police officers or deputies is specifically recognized as a viable tort that may be brought against the state or a municipality in a proper case. *Storm v Town of Ponce Inlet*, 866 So.2d 713 (Fla. 5th DCA 2004).

Thus, Jackson's claim that the Sheriff's negligent hiring, training, supervision and retention of Montesino caused him to suffer damages, taken as true and viewed in light most favorable to Jackson, alleges facts on which the Sheriff, if a private entity, would be liable.

Although the Sheriff is is charged with circumstances which would theoretically subject a private person to liability under Florida law, in this case plaintiff does not come forward with any

16

evidence to support these allegations of negligence.  As noted above, there is nothing in Montesino's employment history which would have counseled  against his hire, and he was screened and trained in accordance with all applicable state laws and internal regulations of the Sheriff's Department. Further, there is nothing to show that the Department was on notice of a particular problem with Montesino's application of force that would have warranted additional training or caused it to reconsider retaining him as an employee at some earlier point in time.

Moreover, even if the record  were susceptible of supporting these allegations of negligence in the hiring, training and retention of Montesino,  the Court must nevertheless consider whether the Sheriff's Department is immune  from  suit  on  ground  that  its  actions  in  this  regard  were "discretionary" and not "operational" acts.  As noted, a governmental agency is immune from tort liability based on action that involve its "discretionary " functions, such as "policy making, planning or judgmental governmental functions."  *See Dept. Of Health and Rehabilitative Services v Yamuni*, 529 So.2d 258, 260 (Fla. 1988).

In this case, the acts on which Jackson's negligent hiring, training supervision claim are cased are classic "discretionary" type governmental functions which enjoy immunity from tort liability. A municipality's decision regarding how to train its officers and what subject matter to include in the training is clearly and exercise of governmental discretion regarding fundamental questions of policy and planning.  *Lewis v City of St. Petersburg*, 260 F.3d 1260 (11th Cir. 2001).  Similarly, the decision of a municipality to hire, fire or retain a police officer involves exercise of governmental discretion at the highest level, and is  "precisely the area into which, under the separation of powers doctrine, courts must not intervene."  *Storm v Town of Ponce Inlet*, 866 So.2d 713 (Fla. 5th DCA 2004).

17

Accordingly, the court shall grant the Sheriff's motion for summary judgment on Count 5 on the alternate basis that the claim is barred by the"discretionary "function exception to the waiver of sovereign immunity.

## IV.  Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1.  Defendant Montestino's motion for summary judgment [DE# 14] on plaintiff's §1983 claim  (Count 3) is **DENIED.**

2.  Defendant Bradshaw's motion for summary judgment on the plaintiff's § 1983 claim (Count 4) and the negligent hiring/retention/supervision claim (Count 5) [DE# 13] is **GRANTED.** Final partial summary judgment shall enter accordingly in favor of defendant Bradshaw by separate order of the court.

3.  The plaintiff's state law battery and negligence claims (Counts 1 and 2) against the Sheriff and his §1983 claim against defendant Montesino (Count 3) remain pending for trial.

**ORDERED AND ADJUDGED** in Chambers at West Palm Beach, Florida this 1st  day of June, 2009.

Daniel T. K. Hurley
United States District Judge

For updated court information, visit unofficial Web site at http://us.geocities.com/uscts